We are ready for our oral argument in our first case, Mr. Braga. Good morning, Your Honor. I'm the director of the Appellate Litigation Clinic at the University of Virginia School of Law. I'd like to introduce to the court this morning third-year law student Sejal Jabiri, who has satisfied the requirements for student practice before this court and who has our client's consent to argue this case. Good morning and thank you. May it please the court, my name is Sejal Jabiri and I'm representing the appellant, Mr. Abel Rangel. Mr. Rangel's trial counsel was ineffective in failing to request a Collins instruction for the critical determination of the amount of marijuana attributable to Mr. Rangel. In addition, trial counsel was ineffective for failing to object to the drug quantity in the pre-sentence report. The district court erred when it held that there was no prejudice in this case. But for counsel's errors, Mr. Rangel would have received a different sentence. This court should remand the case to the trial court, as it did in United States v. Collins, to re-sentence Mr. Rangel at the lowest threshold quantity the jury could have possibly found under the statutory regime. The prejudice standard under Strickland establishes that to – requires that the petitioner show that it is reasonably probable that but for counsel's errors, there would have been a different result. In this case, the failure to request the Collins instruction was highly prejudicial to Mr. Rangel. The Collins instruction requires that the jury, specifically the jury, make the determination of the drug quantity that is reasonably foreseeable to each individual defendant. In this case, that instruction was not given. The jury found 1,000 kilograms of marijuana. Absolutely. The government doesn't contest that there was no instruction. But our argument is – In fact, we're really not arguing about the existence of Collins error, are we? No. Our argument is that the failure to have the Collins instruction was prejudicial to Mr. Rangel. And to show that, I want to go through the evidence a little bit. The government argues that the failure to have a Collins instruction was harmless error because there was enough evidence to show that Mr. Rangel himself would have been held accountable for 1,000 kilograms of marijuana or more. However, the government's evidence in this case is weak as to Mr. Rangel specifically. First, they rely on the testimony of two co-conspirators. Well, could I just – Was there an objection to the pre-sentence report? No. There was no objection to the pre-sentence report made. And that's the second performance error that we're arguing. Thank you. So, going back for a minute to the Collins instruction, the evidence in this case would not show that Mr. Rangel should be held responsible for 1,000 kilograms of marijuana. Can I ask you a question? Do you disagree with the government that it would have shown that he was responsible for at least 100 kilos? We would argue – Isn't there direct sort of evidence tying him to that much? There's direct evidence tying him to about 35 pounds of marijuana, which is about 17 kilograms at about a 2.2 conversion rate. So, you disagree that he would get up to 100? Yes, we disagree on that point. And just to go back to the actual amount of marijuana, Mr. Rangel is only tied to marijuana in three specific instances. The rest, again, depend on the testimony of two co-conspirators, Mr. Hillman and Mr. Cato. Why would that be problematic? Most of the – In fact, I would say all of the evidence in conspiracy cases comes from co-conspirators. Surely that's, in and of itself, not a problem. Absolutely. In and of itself, it is not a problem. But in this particular case, the co-conspirators that testified are weak as to Mr. Rangel specifically. They testified – Don't we have to assume that the jury believed them? That's why the jury convicted, right? We have to assume that the jury believed them as to the amount of marijuana in the conspiracy as a whole. But what about – And you just correct me if I'm misremembering the record, please. But I thought that they testified that they made these trips carrying marijuana and that he's the one who directed or paid on those trips. Well, actually – The jury must have believed that, right? So just to take that step by step, Mr. Cato, for example, says that Mr. Rangel only directed him on three of those trips. And how much weight was involved on those three trips? So Mr. Hillman and Mr. Cato claim that they transport about 50 pounds of marijuana, except that when Mr. Cato was stopped, there was only 27 pounds of marijuana found at the time. So this is another issue with the veracity of how much that they're carrying on each trip. Are you challenging – I'm not quite sure where this takes you. Are you challenging the credibility of the co-conspirators? We're specifically challenging the credibility of the co-conspirators as to their testimony about Mr. Rangel. But how – We don't assess credibility on appeal. We assume that the jury below heard the evidence and believed what its verdict supports. So I'm not sure how we get to parse that testimony and pick parts of it that we believe and parts of it that we discredit. That's why the failure to request the Collins instruction is so important. Because the jury was never able to have this discussion. They were never able to weigh the pieces of evidence as to Mr. Rangel. The problem, though, is that that argument becomes completely circular. The Collins error is prejudicial because the co-conspirators couldn't be believed as to the correct amount of marijuana involved in these transactions. And they can't be believed as – the testimony can't be accepted because there was Collins error. There has to be a starting point. Don't we have to, at this point, sort of unravel what happened? And I would have thought that the starting point would be what the record reflected. Sure. So if we assume that the jury believed the evidence that the two co-conspirators presented as to the conspiracy as a whole – Let's proceed for purposes of your response, at least to me, on that assumption. Absolutely. The more important point is that their testimony about Mr. Rangel is fairly limited. And to attribute the full 1,000 kilograms of marijuana to Mr. Rangel based on that testimony is what we're arguing is prejudicial. As I just mentioned a moment ago, Mr. Cato actually only mentioned having Mr. Rangel direct him on three specific trips towards the end of his time. He says his last three trips to Texas. In addition, he testifies to never having seen Mr. Rangel at the trailer in Virginia, which was supposed to be a major waypoint for this conspiracy. You don't contest the conviction? No, we do not. So that means the jury had to have found something less than, at a minimum, something less than 50 kilograms, which is the bottom weight of 841. So in a Collins setting, as I understand the cases where there has been a reversal as to the sentence, a location as to the sentence in a Collins area, there's only been one remedy, which is to have it go back, put the government to an election, either to a new trial or a sentence at the base of 841 in terms of weight, unless there's overwhelming evidence based on the amount charged. But you've got a fairly large gap in between. Judge Harris asked me a question about the 100 kilograms. What happens if there's overwhelming evidence of something between 50 and 1,000? We would say that the government can choose to retry Mr. Rangel, but that because this was a decision that the jury should have made, that if the district court is going to resentence him without retrying him, that it should be at that lowest threshold, the 60 to 50. So it's all or nothing there? There isn't any other option? Except for if the government chooses to retry him. That was how we talked about it in Collins, but this case is different. This is a very different posture because now we're here on an ineffective assistance claim, so now the burden is on the defendant to show that there's a reasonable likelihood that the sentence would have been different. And if that's the inquiry, I'm stuck on why we can't look at this 100 pounds. Okay, so if we were to look then at, just for thinking about the ineffective assistance of counsel claim, looking at the different quantities of marijuana, this is an instance where quantity is the driver of sentencing. There are no other factors that increase sentencing. No criminal history, no violence in the acts. And so quantity is the driver. And so if we can show that there's a quantity, so he was sentenced to 121 months for above 1,000 kilograms. However, the sentencing guideline drops to between 97 and 121 months if you get from between 700 and 1,000 kilograms. And it continues to drop as we show that there's less. I guess what I'm getting at, and maybe you can – I don't mean to – I understand what you're saying, and I don't mean to cut you off, but I guess my biggest question is, I was thinking about the mandatory minimums, and if it's 100 in the maximums, then the sentence here would have been within the statutory maximum. Is that right? If we were assuming 100 kilos. If we're assuming 100 kilos, yes, the statutory maximum. And when you put that together with the judge who says, look, whatever the jury does, I would have found the same sentence. I would have attributed, based on the information in the PSR and the information that came out at trial, I would have said 1,000 kilograms or more for purposes of calculating the sentence. And now we know that would have been within the statutory maximum. So where's the prejudice? That's my question. Well, that gets back to the second ineffective assistance counsel claim, which is on the failure to object to the drug quantity in the pre-sentence report. So the judge relies on the drug quantity in the pre-sentence report. But again, that drug quantity is from the tainted jury decision. And so the trial counsel had a responsibility, and it was his professional duty to object to the quantity. And in United States v. Gilliam, we see what happens when trial counsel does object to quantity. In that case, the trial counsel made an objection, and this court held that the drug quantity could not be used because it was based on a similar case, a tainted jury verdict. It seems like here what the judge said was not only, look, the PSR finds this based on the jury verdict, but also anyway, that's what I would have attributed had I done sort of an independent review. And even without the jury's finding, the base defense level would have been 32. So isn't that a problem? Well, it doesn't seem like it is tainted. It goes back to thinking about how the Collins violation interacts with the sentencing. In this case, the jury under Collins is required to make a determination of a gradient of drug quantity. If they had made that determination, the judge would not be able to move above that gradient. And so if they had said, for example, that it was between the 0 and 50 kilogram, then the judge could not have on his own said 1,000 kilograms in sentencing. But the judge could have imposed a variant sentence. Yes, Your Honor. And seemed to have made it pretty clear in commenting about this particular defendant that, as I believe he said, none of the factors that he looked at of the 3553A factors weighed in his favor. Yes, but he also does not have any of the negative factors that would have increased his sentencing in terms of criminal history or violence during the crime. And so that weighs sort of to counterbalance some of those factors. So moving on to the pre-sentence report. The probation officer produced the pre-sentence report and, again, relied on the decision by the jury. Now, as I was just citing in the United States v. Gilliam, in order to have the court do an independent analysis, it requires this objection by trial counsel. And in this case, trial counsel failed to object, which continued, which prejudiced Mr. Rangel in that he received a sentence higher than what he would have. You surely can't be saying that the district court couldn't conduct an independent analysis without an objection from counsel? No, no, Your Honor. We're saying that the objection would have triggered the district court to know that they should do an independent analysis and would have, without the objection, the district court does not have to. But did? In the pre-sentence report, the judge seems to be relying upon... Okay, so we're talking about two different things. Assuming that the pre-sentence report does rely on the tainted amounts in the jury verdict, you have the language, I thought, I recall, from the colloquy indicating that the judge on his own, based on his observations and assessments at trial, would have found Mr. Rangel responsible for the 1,000 kilograms. I see that my time is up. Please finish, Justice. Thank you. I'm sorry to have taken you over. No problem. The judge, as I recall in his colloquy, was also relying on the fact that there was a 10-year mandatory minimum in this case, and that was triggered by the 1,000 kilograms of marijuana. Thank you very much, and you have some time on rebuttal. Thank you. Mr. Miller? Good morning. Excuse me. Good morning. May it please the Court. I'm going to skip right to the end, and that is whether there is a reasonable probability that the sentence would be different. I think each one of the judges has recognized the salient point here,  and that is that even if you accept, we're not willing to concede, but even if you accept that there was performance problems, the sentence would be the same. And I will get in a moment to what the district court did and said, but let's talk first about the notion that the defendant brings up that there is somehow a five-year cap and so we can't go over the five-year cap. As Judge Duncan had pointed out, except for the five-year cap, the judge could have varied if he wanted to, but he didn't even have to. He could have stacked. He had to stack, in fact. I thought stacking was discretionary. Well, it says, what it says is, if the sentence imposed on the count carrying the highest mandatory minimum sentence is less than the total, then the sentence imposed shall run consecutively. Now, in the report, that's the sentencing guidelines. Now, what the defendant says is, well, that's just discretionary, and the judge could have done something different. But then you have to go look and see what the judge said. As the court has already pointed out, the judge did three things at sentencing that are a pretty strong indication that the judge is not going to vary from that. But the judge, he didn't make a finding of stacking. At that time, he didn't have to stack because he had a cap of 40 years, or a life, I guess it was 10 to life. So there was no need to stack. Well, but if he didn't do it when he was doing the sentencing, I mean, how can you make the point now that it would be required anyway? With all due respect, I think those are two different things. At the time of sentencing, stacking did not come into play. Stacking comes into play only when the guidelines exceed what the mandatory time is. And your point, as I understand it, is that it goes to the reasonable probability argument that the sentence would have been different. Correct. And so if we look at the stacking and what the reasonable probability is. I'm sorry, just as well, I'm just trying to clarify. But you think that, or your position is that even after Booker, the stacking part of the guidelines remains mandatory? Yes, that's what it tells the court that you shall stack. Now, let's assume, though, because the judge can always vary. So let's look at what it is that the judge would have done based on what he said and what he did. Because Booker says that it's mandatory. If there is, Your Honor, I'm not aware of that. And so let's step back from whether it's mandatory or not and see whether, in this particular case, the judge was inclined to do that. And so there's three things, I think, that you need to look at. The first is, in this particular case, at sentencing, the mandatory time that the judge felt he had was 120 months. The bottom of the guideline range was 121 months. So had the judge wanted to vary, he could have. He could have gone from 121 to 120 months. He did not do that. That's number one. As the court has already pointed out, in sentencing the defendant, the court said, I've looked at the 3553 factors, and I can't find a single one in your favor. Not one. And then on top of that, the court said, you know, you ought to be sentenced at the top of the guideline range. And so that's a pretty strong indication that the court would not have varied. So is that, in your view, an alternative sentence of finding? I'm not sure I'm following. Are you making the point, or is your argument, I think, in that regard, that that gives us an alternative default finding? Yes. The bottom line is, even if you find that there's a Collins error, and even if you say, as a result of that Collins error, we're going to cap count one at five years and send it back, the sentence is not going to change. And that gets to the second part of that, and Judge Harris picked up on that, and that's what the district court said in the 2255 motion. And it's significant. What the defendant focuses on is what the judge did and said at sentencing. At that particular point in time, there was no reason for the court to make specific findings. Was that because there was no objection based on Collins? It seems like you kind of go in a circle there. Well, it's not. I'm not suggesting there was not a Collins error. There was a Collins error. The question is, was there prejudice as a result of that? And the district court, in the 2255 proceeding, looked at the evidence extensively, wrote a 28-page opinion, six pages of which were details about what the facts were, and three times in that opinion, three times the district court said, I find 1,000 is appropriate for this defendant. I find a level 32 is appropriate for this defendant, and, in fact, went so far as to say on page 412, because of all of this, accordingly, trial counsel had no basis to object to the probation officer's determination. In other words, I would have found it anyway. He says that's based even without the jury's finding. So this notion that somehow this sentence was poisoned by this Collins error at trial is simply not correct. The district court made his own determination of the facts, came to the conclusion that based on those facts, 1,000 was the appropriate quantity for this defendant, 32 was the appropriate offense level for this defendant, and a guideline range of 121 to 151 months said that specifically was appropriate for this defendant. So even... No, finish your sentence. I was simply going to say... I would like to... I do have a question, but please finish your sentence. Well, it was just to summarize it. So even if the court were to find Collins error, to take the Collins remedy of saying we're going to cap it at five years on count one, it goes back to the district court. The district court then comes back and says, I've already found 121 to 151 is appropriate under 5G1.2. I'm going to give you five years on count one. I'm going to give you a consecutive five years on count four. And then he gets at least a consecutive one month on count seven, and we are right back to where we started. Suppose we, for purposes of this question, assume that we only agree with you, we only agree that there's overwhelming evidence of 100 kilograms. How would that factor into your analysis? I don't think it changes anything for two reasons. Number one is I do believe that you can say that as a result of that, under Foster and Reed and those cases, that there is not a reasonable probability it would be a different sentence. None of those cases involved a drop down of weight. Well, what they involve is clear Collins error, and I don't believe it's clear from them exactly what the weight difference would be. There's no evidence, unless you point it out, I'm not recalling any evidence or discussion in those cases, that there was anything other than overwhelming evidence of the weight that caused the original sentence. That is correct, Your Honor. So my point is not that they decide this. I can't point you to a case that addresses this specifically. But under that principle – I don't want to belabor you too long, but this is complicated. It came up in questions to opposing counsel. What happens, particularly that you're here not on direct appeal, but 2255, if there's something between 50 and 1,000, you get over 100? There doesn't appear to be a case that has really ever addressed that. I think that goes back to Judge Tompkins' question. That's correct. I don't believe that this court or any other that I'm aware of has addressed that issue. But again, even if you find that, the results are not going to be different because the remedy would be to send it back to the district court. The district court has already made clear what the court's findings would be. And the other – well, there's a number of twists to this case. First of all, Collins was pre-Booker, and that made it a little odd. And then you have the difference in the burden of proof, the bearing of the burden of proof at this phase of the inquiry. So it's a quirky case. It is indeed quirky. I think it's made simple by the specific findings of the district court. I don't want to be a broken record, but that really resolves the issue because no matter what the court does, if the court says there is a Collins error and we're sending it back, if the court says there's a Collins error but we're not sending it back, the defendant ends up at 121 months. I want to address briefly this notion that somehow the evidence as to this defendant was particularly weak, and that's simply not true. The question is whether it's weak to get over 1,000 kilograms. And it's not. What the defendant does is say, well, the prosecution only came to trial with 35 pounds that they put on the table, and that's not 1,000, and so therefore he's not guilty. But the defendant's argument really comes down to this. There is a reasonable probability that somehow what was reasonably foreseeable to the mules, human and cattle, was somehow not reasonably foreseeable to their boss, and that was the defendant. And the testimony was clear that the defendant had been in the conspiracy the entire time these people were in it, that his role was as a supervisor, that he supervised trips, that he went on trips with them, that his role in going on those trips was they would get the drugs from the people bringing it across from Mexico, and then he and the other bosses would package it down, repackage it, put it in the cars, which on at least some occasions the defendant obtained, and then it would then be transported by the mules. On at least one occasion, the defendant is the one that received the drugs back in northern Virginia, and then he was present on numerous occasions at the primary place where the drugs were sold, which is the trailer. I want to be clear about something, because the defendant said that Mr. Cattle testified that he did not see the defendant at the trailer. That's not what he said. He said he didn't recall whether he had. He didn't say he wasn't there. He didn't say he was there. He said, I can't remember. But Mr. Hillman was very clear. I was there hundreds of times, and the defendant hung out there. And in fact, I bought drugs from the defendant at the primary place where these people sold drugs. So the evidence was very clear that the defendant was integrally involved in everything going on in this conspiracy. So is part of your argument that there is overwhelming evidence that we can, for Strickland purposes, there is no reasonable probability that this jury would have come back with under $1,000? Absolutely. There is no basis to believe that there is a part of this conspiracy that not only did the defendant not know about, but had he known about it, he would have been surprised by it. He was integrally involved in everything. And so for that reason that there is not a reasonable probability that a jury would have decided differently, and also for the further reason that even if you were to send this case back to the district court, we're going to end up at 121 months. So in thinking about prejudice under Strickland, I think I'm understanding, but I want to make sure I'm right. It's sort of a cumulative inquiry in your mind. Everything would have had to have gone right for the defendant, basically. First the jury would have had to come back with under $1,000, which you think is unlikely. And then the judge would have somehow had to have changed his mind about what he thought was attributable to the defendant. Correct. You're right. Everything has to break in the defendant's favor, and none of them do. But if anyone doesn't, which is enough is the judge has already said $1,000 is appropriate. And for those reasons, we would ask that you affirm the district court. Thank you. Thank you. Mr. Varey, you have some time on rebuttal. To start on rebuttal, I'd like to address the characterization of Mr. Rangel as being the boss or highly involved in this conspiracy. In fact, the pre-sentencing report says that he was not the boss. He doesn't get any increase for that. It's the joint appendix. He served in middle management. Exactly. He served in middle management. And to add to that fact, in the government's indictment in which they allege a five-year conspiracy, Mr. Rangel's acts actually only cover a span of eight months, from August of 1992 to April of 1993. But even in his middle management capacity, he was responsible for the performance of other members of the conspiracy, as I recall. To the extent that could be reasonably foreseeable to him. Well, people were working for him, so to speak. He was the middle manager of it. Basically, whatever they do reasonably foreseeable to him, of course, is conspiracy theory. Let's assume that we do, because I don't see how we don't. I apologize. Crediting the testimony of Mr. Hillman and Mr. Cato and discussing the trips that they took to Texas, those trips of total maybe 17 trips of they claim 50 pounds, though they've only been found with 27, you're still getting at about 850 pounds, which is less than 430 kilograms. Crediting everything, which is less than half of the 1,000 that was claimed or that was found attributable to Mr. Rangel under the failure to give the Collins instruction. This is important because then the second layer of this is the timing. The government relies on this five-year-long conspiracy to say that you could get to 1,000 kilograms. If we look at the facts and see that Mr. Rangel was not involved in this conspiracy for the entire time period and can't be held liable for things that involve him with the conspiracy, the number, again, drops for Mr. Rangel specifically. And quick to address the stacking point, stacking is discretionary after a United States v. Booker. And as Your Honors pointed out, the judge did not do any of the analysis required under that portion of the sentencing guideline. But could have gotten to the same point with a variant sentence. Could the district court stack on if we send it back? The district court would have to do. Would have to make the appropriate findings. The appropriate findings, yes. But that's something for the district court to do. Of course. I was simply asking if they would have the authority. I was just inquiring as to whether they would have the authority to do so. Yes, Your Honor. So even if I'm not sure I understand the full import of your answer, if we gave you the relief under the policy to send it back, then that relief would only apply to the sentence as to the conspiracy. Yes. Only count one. So you would be under, you would have no more than five years, but that would not affect what the judge did with respect to the other two counts. No, it would not affect what the judge did to the other two counts. And you would make a separate inquiry as to the stacking claim. I just want to point out that the government argued that all of the negatives the judge stated about Mr. Rangel, but he sentenced him at the minimum of the range that he could have. The range was 121 to 151 months. And he sentenced him at 121 months. And if the district court was to do this analysis again, that might hold some sway in his decision. Although even there it's hard to rely too much on what he said in that regard. Because as I recall, he also said something to the effect that his sentence could easily have been much higher. That there was a basis for him. And I'm forgetting the precise language. Perhaps you remember what I'm thinking of. Yes, I believe I do. And just to respond to that, I think that's why it's so important that we remand this case to the district court. And allow the district court to re-sentence. Is Mr. Rangel subject to deportation upon release? Your Honor, my time is up. May I respond to that? Please do. Yes, he is subject to deportation upon release. Thank you very much. I want to thank you, Ms. Chivary, and your able co-counsel, I'm sure, even though you did not argue today. Thank you very much for undertaking this representation for the court. We are very grateful for your services. And now we will come down and greet counsel and proceed directly to the next case.
judges: Allyson K. Duncan, G. Steven Agee, Pamela A. Harris